**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION**

RENE RUIZ,                                                Case No.:

       Plaintiff,

v.

EXPERIAN INFORMATION SOLUTIONS, INC.,
HUNTER WARFIELD, INC., and EXECUTIVE
AFFILIATES, INC. and SUTTON PLACE AT TURTLE RUN, LTD.,
d/b/a GROVE AT TURTLE RUN,

       Defendants.

_____/

**<u>PLAINTIFF'S COMPLAINT</u>**

Plaintiff, Rene Ruiz, alleges violations of the Fair Credit Reporting Act 15 U.S.C. § 1681 *et seq.* ("FCRA") against Defendant Experian Information Solutions, Inc. ("Experian") and violations of the FCRA, the Florida Consumer Collection Practices Act § 559.55 *et seq.* ("FCCPA") and the Fair Debt Collection Practices Act 15 U.S.C. § 1692 *et seq.* ("FDCPA") against Defendant Hunter Warfield, Inc. ("Hunter") for deceptive and illegal debt collection and credit reporting practices.   Plaintiff further alleges violations of the FCRA and FCCPA against Executive Affiliates, Inc. and Sutton Place at Turtle Run, Ltd., d/b/a  Grove at Turtle Run ("Grove") for deceptive and illegal debt collection and credit reporting practices.

**PARTIES**

1.      Plaintiff is a natural person and resident of Broward County, Florida.

2.      Experian is a foreign for-profit corporation with its principal place of business at 475 Anton Boulevard, Costa Mesa, CA 92626.

3.      Hunter is a foreign for-profit corporation with its principal place of business at 4620 Woodland Corporate Blvd., Tampa, FL 33614.

4.      Grove At Turtle Run owns and operates a multi-unit apartment complex in Coral Springs, FL.

## JURISDICTION AND VENUE

5.      The Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises out of the FCRA and the FDCPA, federal statutes.

6.      The Court has supplemental jurisdiction over the FCCPA claim under 28 U.S.C. § 1367 because the basis of the FCRA and FDCPA federal claims involve the same illegal conduct that forms the basis of the state claim.

7.      The Court has personal jurisdiction because Defendants conduct business throughout the United States, including Broward County, Florida. Further, their voluntary contact with Plaintiff to charge and collect debts in Florida made it foreseeable that Defendants would be haled into a Florida court. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).

8.      Venue is proper because the alleged acts and transactions complained of occurred here and the Defendants transact and/or conduct business here.

## APPLICABLE LAW

9.      The Florida Supreme Court liberally construes public protection statutes in favor of the public. *Samara Dev. Corp. v. Marlow*, 556 So. 2d 1097, 1100 (Fla. 1990).

**FCRA**

10.      "Congress enacted FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52, 127 S. Ct. 2201, 2205 (2007) (citations omitted).

11.      Congress found that "[i]naccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which

2

is essential to the continued functioning of the banking system." 15 U.S.C. § 1681(a)(1).

12.     Congress also found that "[c]onsumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers" and that "[t]here is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(3),(4).

13.     To further the FCRA's purpose, Congress requires that a "consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. § 1681(b).

14.     "The aim of the Fair Credit Reporting Act is to see that the credit reporting system serves the consumer as well as the industry. The consumer has a right to information which is accurate; he has a right to correct inaccurate or misleading information; he has a right to know when inaccurate information is entered into his file; he has a right to see that the information is kept confidential and is used for the purpose for which it is collected; and he has a right to be free from unwarranted invasions of his personal privacy." The Fair Credit Reporting Act seeks to secure these rights." *Hearings on S. 823 Before the Subcomm. on Financial Institutions of the S. Comm. on Banking and Currency*, 91st Cong. 2 (1969) (emphasis added).

15.     The FCRA requires credit reporting agencies to "follow reasonable procedures to assure maximum possible accuracy of" consumer reports. 15 U.S.C. § 1681e(b).

16.     If a consumer disputes information contained in their credit report, the FCRA requires a credit reporting agency to "conduct a reasonable reinvestigation to determine whether

3

the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller."15 U.S.C.S. § 1681i(a)(1)(A).

17.     In performing the reinvestigation, the FCRA requires a credit reporting agency to "review and consider all relevant information submitted by the consumer in the period described in paragraph (1)(A) with respect to such disputed information."15 U.S.C.S. § 1681i(a)(4).

18.     If the disputed information is inaccurate or incomplete or cannot be verified, the consumer reporting agency "shall…(i)  promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation; and (ii)  promptly notify the furnisher of that information that the information has been modified or deleted from the file of the consumer." 15 U.S.C. § 1681(a)(5)(A)(i),(ii).

19.     The FCRA provides a private right of action against any person that violates the provisions of the FCRA. 15 U.S.C. §§ 1681o, 1691n.

20.     If the violation is negligent, the FCRA allows the consumer to recover actual damages (§ 1681o(a)); however, if the violation is willful, the consumer may recover any actual damages or statutory damages from not less than $100.00 and not more than $1,000. § 1681n(a)

**FDCPA**

21.     In enacting the FDCPA, Congress found that "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy."15 U.S.C.S. § 1692(a).

22.     The purpose of the FDCPA is "to eliminate abusive debt collection practices …

4

and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692.

23.     The FDCPA prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," which includes the false representation of "the character, amount, or legal status of any debt" or "any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt" and "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed."15 U.S.C. §§ 1692e(2)(A),(B) and 1692e(8).

24.     The FDCPA also prohibits debt collectors from "unfair or unconscionable means to collect or attempt to collect any debt," including the "collection of any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by law." *Id.* § 1692f.

25.     The FDCPA creates a private right of action under 15 U.S.C. § 1692K.

26.     The FDCPA defines "debt collector" as "any person who uses … any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect … debt owed … or asserted to be owed or due another." Id. § 1692a(6).

27.     The FDCPA defines communication as the "conveying of information regarding a debt directly or indirectly to any person through any medium." Id. § 1692a(2).

28.     The FDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction … [that] are primarily for personal, family, or household purposes." Id. § 1692a(5).

**FCCPA**

29.     The FCCPA provides that "[n]othing in this part shall be construed to limit or

restrict the continued applicability of the federal Fair Debt Collection Practices Act to consumer collection practices in this state. This part is in addition to the requirements and regulations of the federal act. In the event of any inconsistency between any provision of this part and any provision of the federal act, the provision which is more protective of the consumer or debtor shall prevail." Fla. Stat. § 559.552.

30.     The FCCPA prohibits debt collectors from engaging in certain abusive practices in the collection of consumer debts. *See generally* Fla. Stat. § 559.72.

31.     The FCCPA's goal is to "provide the consumer with the most protection possible." *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1192 (11th Cir. 2010) (citing Fla. Stat. § 559.552).

32.     Specifically, the FCCPA states that no person shall "claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist." Fla. Stat. § 559.72(9).

33.     The FCCPA creates a private right of action under Fla. Stat. § 559.77.

34.     The FCCPA defines "consumer" as "any natural person obligated or allegedly obligated to pay any debt." *Id.* § 559.55(8).

35.     The FCCPA mandates that "no person" shall engage in certain practices in collecting consumer debt. *Id.* § 559.72.

36.     This language includes all allegedly unlawful attempts at collecting consumer claims. *Williams v. Streeps Music Co.*, 333 So. 2d 65, 67 (Fla. Dist. Ct. App. 1976).

37.     The FCCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services

which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." *Id.* § 559.55(6).

## FACTUAL ALLEGATIONS

38.     On or about January 24, 2015, Plaintiff visited The Grove for a tour, ultimately deciding to submit an application to rent an apartment.

39.     Plaintiff paid a $250 application fee and signed an application to rent unit 831 at 3651 Turtle Run Blvd., Coral Springs, Florida 33067.  The Application is attached as Exhibit "A."

40.     The $250 application fee was a $100 deposit and a $150 fee, "to cover [the Grove's] cost of procuring a consumer credit report, Landlord references, and employment verifications and other processing costs."

41.     The application states: "This application is preliminary only and does not obligate the owner and/or owner's representative to execute a lease or deliver possession of the proposed premises." *Id*.

42.     Further down the application states: "The applicant applies for and offers to execute a Lease at a monthly rental amount of $1,524." *Id*.

43.     The application provides for liquidated damages ***in the event the application is approved*** and the applicant does not sign a lease or move in.

44.     It states, in relevant part, "[i]f applicant fails to execute a lease agreement or refuses to occupy the premises on the assigned date, the applicant will be responsible for damages in the amount equal to one month's rent stated above." *Id*.

45.     After completing the background and credit checks, on or about January 27, 2015, management at The Grove denied Plaintiff's application based on the Plaintiff's credit report, but

advised Plaintiff that he must pay an additional $1,464 deposit before move-in due to the results of the background check.

46.     The total deposit required to move in now eclipsed $3,500, which is almost double the amount Plaintiff offered to lease the apartment.

47.     Plaintiff could not afford the amount The Grove now demanded and declined to execute a lease under the new terms.

48.     On or about March 3, 2015, the Grove demanded Plaintiff pay liquidated damages of one month's rent [$1,524] for failure to execute the lease for unit 831.

49.     Plaintiff and his wife contested this and explained that the Grove denied the application, and as such, they were under no obligation to pay the liquidated damages that the Grove now demanded.

50.     Upon information and belief, The Grove assigned and/or sold the illegitimate debt to Hunter. The Grove and Hunter then acted jointly and in concert in an attempt to collect an illegitimate debt from Plaintiff.

51.     On March 13, 2015, Plaintiff received a letter from Hunter demanding payment of $1,524 on behalf of the Grove.

52.     The Grove knew the terms of the offer under the rental application because it drafted and required Plaintiff to agree to them.

53.     The Grove also knew it denied Plaintiff's rental application under the original terms.

54.     Therefore, the Grove knew Plaintiff had no responsibility to pay the one month liquidated damages for failing to sign a lease because Plaintiff rejected the Grove's higher offer.

55.     Hunter sought to enforce the rental application on behalf of The Grove. Therefore, Hunter is charged with knowledge of the application's terms.

56.     Plaintiff then discovered a negative account on his Experian credit report.

57.     Hunter, on behalf of the Grove, reported a past due debt of $1524 on Plaintiff's credit report.

58.     Plaintiff disputed the debt in writing with Experian who in turn relayed the dispute to Hunter and The Grove.

59.     Both Defendants received the dispute from Experian, and in accordance with their customary practice, conducted no diligent investigation, and both Defendants verified the illegitimate debt.

60.     In September 2015, Ms. Ruiz spoke to Kim, a manager at the Grove and explained the situation. Kim stated that she understood the confusion and would contact Hunter in order to resolve the matter.

61.     In October 2015, Plaintiff and his wife again spoke with Kim at the Grove, but this time she explained that The Grove would not cancel the illegitimate debt and would not request that stop its attempts to collect the illegitimate debt.

62.     In July 2016 Plaintiff received another collection letter from Hunter, on behalf of the Grove, seeking to collect $1,524.

63.     In July 2016, Plaintiff again disputed the illegitimate debt with Experian.

64.     In August 2016, Experian reported its investigation into the negative account, but stated it would remain on the Plaintiff's credit report.

## COUNT I AS TO EXPERIAN'S VIOLATION OF
## THE FAIR CREDIT REPORTING ACT 15 U.S.C. § 1681e(b)

65.    Experian is a "consumer reporting agency," as defined in 15 U.S.C. § 1681(f) because it is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports to third parties and it disburses consumer reports under contract for monetary compensation.

66.    Experian published the Plaintiff's consumer report to the leasing agent and other third parties.

67.    Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit report and the credit files it publishes and maintains concerning the Plaintiff.

68.    Because of Experian's violation, Plaintiff suffered damage by loss of the lease of an apartment; loss of the ability to purchase and benefit from credit; mental and emotional pain; anguish; and the humiliation and embarrassment of credit denials.

69.    Experian's conduct, action and inaction was willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

70.    In the alternative, Experian negligently violated the FCRA entitling the Plaintiff to recover under 15 U.S.C. 1681o.

## COUNT II AS TO EXPERIAN'S VIOLATION
## OF THE FAIR CREDIT REPORTING ACT 15 U.S.C. § 1681i

71.    Experian is a "consumer reporting agency," as defined in 15 U.S.C. § 1681(f) because it is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports to third parties and it disburses consumer reports under contract for monetary compensation.

72.     Plaintiff sent, and Experian received, a written dispute of a negative account Hunter reported on behalf of the Grove.

73.     After receiving the dispute, Experian violated 15 U.S.C. § 1681i by failing to delete inaccurate information in the Plaintiff's credit file; by failing to conduct a lawful reinvestigation; by failing to forward all relevant information to furnishers; by failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit file; and by relying upon verification from a source it has reason to know is unreliable.

74.     Because of Experian's violation, the Plaintiff suffered damage by loss of the lease of an apartment; loss of the ability to purchase and benefit from credit; mental and emotional pain; anguish; and the humiliation and embarrassment of credit denials.

75.     Experian's conduct, action and inaction was willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

76.     In the alternative, Experian negligently violated the FCRA entitling the Plaintiff to recover under 15 U.S.C. 1681o.

## COUNT I AS TO HUNTER'S VIOLATION OF
## THE FAIR CREDIT REPORTING ACT 15 U.S.C. § 1681s-2(b)

77.     Hunter is a furnisher under the FCRA because it provides information concerning consumers to credit reporting agencies.

78.     Hunter violated 15 U.S.C. § 1681s-2(b) by failing to fully and properly investigate Plaintiff's dispute of the account Hunter reported; by failing to review all relevant information regarding that account; and by failing to accurately respond to the dispute forwarded by Experian concerning that account.

79.     Because of Hunter's violation, the Plaintiff suffered damage by loss of the lease of an apartment; loss of the ability to purchase and benefit from credit; mental and emotional pain; anguish; and the humiliation and embarrassment of credit denials.

80.     Hunter's conduct, action and inaction was willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

81.     In the alternative, Hunter negligently violated the FCRA entitling the Plaintiff to recover under 15 U.S.C. 1681o.

### COUNT 2 AS TO HUNTER'S VIOLATION OF
### THE FLORIDA CONSUMER COLLECTION PRACTICES ACT § 559.72(9)

82.     Plaintiff is a "consumer" as defined by Florida Statute § 559.55(8) because he is a natural person allegedly obligated to pay a debt for the lease of an apartment.

83.     Hunter is a "person" as defined under the FCCPA because it attempted to collect a consumer debt from Plaintiff.

84.     Hunter attempted to collect a "consumer debt" from Plaintiff as defined by Florida Statute § 559.55(6) because he was allegedly obligated to pay a debt for the lease of a home for personal, family, or household purposes.

85.     Hunter knew it was not entitled to collect the alleged debt because Plaintiff disputed the alleged debt and it is charged with knowledge of the terms of the application.

86.     Nonetheless, Hunter attempted to collect an illegitimate debt and enforced, claimed, and asserted a known non-existent legal right to collect the debt as defined by Florida Statute § 559.55(6) when it sent letters directly to Plaintiff demanding payment.

87.     Because of Hunter's FCCPA violation, Plaintiff suffered substantial damage, including but not limited to the misrepresentation of an amount to a third party, an inaccurate credit report, emotional and physical distress, prevention of her statutory right to accurate

information concerning the alleged debt, and financial damage in having to dispute the accuracy of the alleged debt.

88.     Because of the above violation of the FCCPA, Hunter is liable to Plaintiff for actual damages, and statutory damages of $1,000 together with attorney's fees and all costs of Plaintiff's representation. *See* § 559.77(2).

### COUNT 3 AS TO HUNTER'S VIOLATION OF
### THE FAIR DEBT COLLECTION PRACTICES ACT 15 U.S.C. § 1692e(2)(A)

89.     Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) because he is a natural person allegedly obligated to pay a debt for the lease of an apartment.

90.     Hunter is a "debt collector" as defined by 15 U.S.C. § 1692a(6) because it uses the United States mail in the business the principal purpose of which is the collection of debt owed or asserted to be owed or due another.

91.     Hunter attempted to collect a debt as defined by 15 U.S.C. § 1692a(5) because Plaintiff was allegedly obligated to pay a debt for the lease of an apartment provided for personal, family, or household purposes.

92.     Hunter falsely represented the character, amount, and legal status of the alleged debt when it sent letters to Plaintiff demanding payment of an amount to which it was not entitled.

93.     Because of Hunter's FDCPA violation, Plaintiff suffered substantial damage, including but not limited to the misrepresentation of an amount to a third party, an inaccurate credit report, emotional and physical distress, prevention of her statutory right to accurate information concerning the alleged debt, and financial damage in having to dispute the accuracy of the alleged debt.

94.     As a result of the above violation of the FDCPA, Hunter is liable to Plaintiff for actual damages and statutory damages of $1,000.00 per named Defendant found liable, together with attorney's fees and all costs of Plaintiff's representation. 15 U.S.C. § 1692k *et seq.*

### COUNT 4 AS TO HUNTER'S VIOLATION OF
### THE FAIR DEBT COLLECTION PRACTICES ACT 15 U.S.C. § 1692f(1)

95.     Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) because he is a natural person allegedly obligated to pay a debt for the lease of an apartment.

96.     Hunter is a "debt collector" as defined by 15 U.S.C. § 1692a(6) because it uses the United States mail in the business the principal purpose of which is the collection of debt owed or asserted to be owed or due another.

97.     Hunter attempted to collect a debt as defined by 15 U.S.C. § 1692a(5) because Plaintiff was allegedly obligated to pay a debt for the lease of an apartment provided for personal, family, or household purposes.

98.     Hunter attempted to collect an alleged debt not permitted by law and agreement when it sent letters to Plaintiff demanding payment of an amount to which the agreement did not allow.

99.     Because of Hunter's FDCPA violation, Plaintiff suffered substantial damage, including but not limited to the misrepresentation of an amount to a third party, an inaccurate credit report, emotional and physical distress, prevention of her statutory right to accurate information concerning the alleged debt, and financial damage in having to dispute the accuracy of the alleged debt.

100.     As a result of the above violation of the FDCPA, Hunter is liable to Plaintiff for actual damages and statutory damages of $1,000.00 per named Defendant found liable, together with attorney's fees and all costs of Plaintiff's representation. 15 U.S.C. § 1692k *et seq.*

## COUNT 1 AS TO THE GROVE'S VIOLATION OF
## THE FLORIDA CONSUMER COLLECTION PRACTICES ACT § 559.72(9)

101.    Plaintiff is a "consumer" as defined by Florida Statute § 559.55(8) because he is a natural person allegedly obligated to pay a debt for the lease of an apartment.

102.    Grove is a "person" as defined under the FCCPA because it attempted to collect a debt from Plaintiff.

103.    Grove attempted to collect a "consumer debt" from Plaintiff as defined by Florida Statute § 559.55(6) because Plaintiff was allegedly obligated to pay a debt for the lease of a home for personal, family, or household purposes.

104.    Grove knew it was not entitled to collect the illegitimate debt because it drafted and required Plaintiff to sign the application; Plaintiff disputed the illegitimate debt and provided Sutton with all the necessary information to provide actual knowledge that the debt was illegitimate.

105.    Nonetheless, Grove attempted to collect an illegitimate debt and enforced, claimed, and asserted a known non-existent legal right to a debt as defined by Florida Statute § 559.55(6) when it sent letters directly to Plaintiff demanding payment for a debt to which it was not entitled to collect.

106.    Because of Grove's FCCPA violation, Plaintiff suffered substantial damage, including but not limited to the misrepresentation of an amount to a third party, an inaccurate credit report, emotional and physical distress, prevention of her statutory right to accurate information concerning the alleged debt, and financial damage in having to dispute the accuracy of the alleged debt.

107.    Because of the above violation of the FCCPA, Grove is liable to Plaintiff for actual damages, and statutory damages of $1,000.00 per named Defendant found liable, together with attorney's fees and all costs of Plaintiff's representation. *See* § 559.77(2).

## COUNT 2 AS TO GROVE'S VIOLATION OF THE FAIR CREDIT REPORTING ACT 15 U.S.C. § 1681s-2(b)

108.    Grover is a furnisher under the FCRA because it provides information concerning consumers to credit reporting agencies.

109.    Grove violated 15 U.S.C. § 1681s-2(b) by failing to fully and properly investigate Plaintiff's dispute of the account Hunter reported; by failing to review all relevant information regarding that account; and by failing to accurately respond to the dispute forwarded by Experian concerning that account.

110.    Because of Grove's violation, the Plaintiff suffered damage by loss of the lease of an apartment; loss of the ability to purchase and benefit from credit; mental and emotional pain; anguish; and the humiliation and embarrassment of credit denials.

111.    Grove's conduct, action and inaction was willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

112.    In the alternative, Hunter negligently violated the FCRA entitling the Plaintiff to recover under 15 U.S.C. 1681o.

### Relief Requested

WHEREFORE, based on the above, Plaintiff respectfully requests this Court to enter judgment against Defendant for all of the following:

A.  Actual damages;

B.  Statutory damages pursuant to Fla. Stat. § 559.77(2) as referenced above;

C.  Statutory damages pursuant to 15 U.S.C. § 1692k as referenced above;

D.  Damages pursuant to 15 U.S.C. § 1681n or § 1681o as referenced above;

E.  Reasonable attorneys' fees and costs under the FCCPA, FDCPA, and FCRA; and

F.  Such other and further relief as the Court may deem to be just and proper.

G.  Plaintiff respectfully demands trial by jury in this action.

Dated: December 5, 2016                    Respectfully submitted,

/s/ *J Dennis Card, Jr.*                    /
J. Dennis Card Jr., Esq
Florida Bar No.: 0487473
E-mail:DCard@Consumerlaworg.com
Darren R. Newhart, Esq.
Florida Bar No.: 0115546
E-mail: darren@cloorg.com
Consumer Law Organization, P.A.
721 US Highway 1, Suite 201
North Palm Beach, Florida 33408
Telephone: (561) 692-6013
Facsimile: (305) 574-0132

/s/ *Court E. Keeley*                    /
Court E. Keeley, Esq.
Florida Bar No.:  23441
keeley@jakelegal.com
Clyde S. Dunton-Gallagher
Florida Bar No.:  122012
clyde@jakelegal.com
Jacobs Keeley, PLLC
169 East Flagler Street, Suite 1620
Miami, Florida 33131
efile@jakelegal.com
Telephone:  (305) 358-7991
Facsimile:  (305) 358-7992